**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

DAVID E. SUMMERS,

       Plaintiff,

vs.                                                   Case No. 6:12-cv-926-Orl-37TBS

CITY OF DAYTONA BEACH and MARK
LUCKE CRISWELL,

       Defendants.

**ORDER**

This cause is before the Court on the following:

1. Plaintiff's Complaint for Declaratory Judgment, Injunctive Relief and Damages (Doc. 1), filed June 20, 2012;

2. Defendant, City of Daytona Beach, Motion to Dismiss (Doc. 20), filed August 20, 2012;

3. Plaintiff's Response to City's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 22), filed August 31, 2012;

4. Pro Se Answer of Defendant, Mark Lucke Criswell, and Motion to Dismiss Count III of Plaintiff's Complaint (Doc. 24), filed September 5, 2012; and

5. Plaintiff's Response to Defendant Criswell's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 25), filed September 11, 2012.

Upon consideration, the Court hereby grants Defendants' Motions (Docs. 20, 24) for the reasons set forth below.

**BACKGROUND**[1]

Plaintiff operates sound boards at various musical events in Daytona Beach. (Doc. 1, ¶¶ 13, 35.) Defendants are the City of Daytona Beach and one of its employees, Mark Criswell, the Director of Permits and Licensing. (*Id.* ¶ 26.)

In October 2011, Plaintiff was working the sound board for a musical event at a bar in Daytona Beach. (*Id.* ¶ 35.) Plaintiff avers that the music volume was within the lawful limits of the City's noise ordinance. (*Id.* ¶ 37.) Criswell was a customer of the bar and had several alcoholic drinks. (*Id.* ¶ 34.) Criswell allegedly became belligerent and told Plaintiff to turn down the music. (*Id.* ¶¶ 34, 36, 39.) Criswell told Plaintiff that he was the Director of Permits and Licensing. (*Id.* ¶ 39.) Plaintiff then turned down the music. (*Id.* ¶ 41.) Plaintiff asked Criswell if he was drunk; Criswell punched Plaintiff in the face. (*Id.* ¶¶ 42–43.) Criswell was arrested. (*Id.* ¶ 49.) Plaintiff was admitted to the hospital; he sustained injuries to his eyes and nose. (*Id.* ¶¶ 59–62.)

Plaintiff then filed the instant Complaint in June 2012. (*Id.*) Though inartfully drafted, the Court understands the Complaint to allege: (1) a 42 U.S.C. § 1983 claim against Criswell for violating Plaintiff's Fourth Amendment right to be free from excessive force (Count I); (2) a § 1983 claim against Criswell for violating Plaintiff's Fourteenth Amendment right to bodily integrity as a matter of substantive due process (Count II); (3) a First Amendment facial challenge to the constitutionality of the City's noise ordinance (on the theories of vagueness, prior restraint, and unfettered discretion) (Count III); (4) a First Amendment as-applied challenge to the constitutionality of the

---

[1] The following factual allegations, drawn from the Complaint, are accepted as true for the purpose of considering the instant motions and are construed in the light most favorable to Plaintiff. *See Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006).

noise ordinance (also Count III); (5) a § 1983 claim against Criswell for violating Plaintiff's First Amendment right to freedom of speech (also Count III);[2] (6) a § 1983 claim against the City for failure to train or supervise Criswell (Count IV); (7) state law negligent supervision and retention claims against the City (Counts V and VI); and (8) a state law battery claim against Criswell (Count VII). (*Id.*)

The City moved to dismiss Counts III and IV of the Complaint. (Doc. 20.) Criswell, appearing *pro se*, joined the City's motion. (Doc. 24.) Plaintiff opposed. (Docs. 22, 25.) This matter is now ripe for the Court's consideration.

## STANDARDS

Federal Rule of Civil Procedure 8(a)(2) provides that a claimant must plead "a short and plain statement of the claim." On a motion to dismiss, the Court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I.   As-Applied Constitutional Challenge & § 1983 Claims

Plaintiff alleges that by punching him in the face, Criswell violated Plaintiff's First

---

[2] If Plaintiff chooses to replead these claims, he is directed to set out each claim in a separate Count. Count III as currently pled, with three separate claims, was particularly tough to parse, making it difficult to determine which factual allegations went with which legal claims.

Amendment right to play music at a lawful volume. (Doc. 1, ¶¶ 103–29.) Though not a model of clarity, the Court understands Plaintiff to bring three separate charges in Count III: (1) a § 1983 claim against Criswell for violating Plaintiff's First Amendment rights; (2) an as-applied challenge to the constitutionality of the noise ordinance; and (3) a facial challenge to the constitutionality of the ordinance. Count IV sets out a § 1983 claim against the City for failure to train or supervise Criswell. Defendants move to dismiss Counts III and IV. The Court will first examine the as-applied challenge and the § 1983 claims. Then the Court will turn to the facial challenge.

The City argues that Count III should be dismissed because Plaintiff has not sufficiently alleged that the noise ordinance was "enforced" or applied against Plaintiff, so as to form the basis for an as-applied constitutional challenge. (Doc. 20, pp. 9–10.) Indeed, Plaintiff's Complaint alleges the following sequence of events: (1) Criswell was drinking alcohol heavily for a long time; (2) Criswell approached Plaintiff and told him to turn the music down, showing Plaintiff his business card identifying himself as the "Director of the City's Permits and Licensing Department"; (3) Plaintiff turned the music down; (4) Plaintiff then asked Criswell if he was drunk; and (5) only then did Criswell punch Plaintiff. (Doc. 1, ¶¶ 34–43.)

This situation does not give rise to the plausible inference that Criswell was enforcing the ordinance against or applying the ordinance to Plaintiff by punching him in the face. The facts as pled do not plausibly suggest that Criswell was acting as a City code enforcer when he punched Plaintiff—rather, they suggest the much more reasonable explanation that an off-duty individual, who happened to work for the City, had too much to drink and became aggressive when Plaintiff asked about how much he

had to drink. Therefore, the City's motion is due to be granted and the as-applied challenge to the noise ordinance is due to be dismissed because Plaintiff has not sufficiently pled that the ordinance was applied to him.[3]

Plaintiff's § 1983 claims fail to state a claim for similar reasons. Each of those claims rely on the punching incident as the underlying constitutional violation. However, in order to state a § 1983 claim, Plaintiff must allege that Criswell was acting under color of state law when he deprived Plaintiff of his federally protected rights. *See Motes v. Myers*, 810 F.2d 1055, 1058 (11th Cir. 1987). As with the as-applied challenge, Plaintiff's factual allegations as currently pled do not plausibly demonstrate that Criswell was acting as a "state actor" when he punched Plaintiff. *See Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265–69 (11th Cir. 2012) (citing *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510 (11th Cir. 1997)) (upholding a district court's dismissal of § 1983 claims against a law enforcement officer because the factual allegations demonstrated that she was acting in her own personal capacity, rather than under color of state law, when she committed violent acts against her daughter's paramour, but also noting that the outcome could be reversed if based on a different factual predicate). Thus, the § 1983 claims against Criswell (Counts I–III) and the City (Count IV)[4] are all due to be

---

[3] The Court construes Plaintiff to allege the punch as the principal violative act underlying the challenge. While the part of the Complaint dealing with the as-applied challenge points in some paragraphs to Criswell asking Plaintiff to turn down the music before Criswell threw the punch, the Complaint goes on to aver that this order "was given by Criswell because of Criswell's personal objection" (Doc. 1, ¶ 122), making it unclear whether Plaintiff is alleging that Criswell was acting in his capacity as a code enforcer by asking Plaintiff to turn down the music or whether Criswell was simply acting as an individual patronizing the business who then punched Plaintiff. If Plaintiff chooses to replead this claim, he should clearly state which acts are the basis for the challenge.

[4] The City may be held liable under § 1983 only where the underlying constitutional violation was undertaken pursuant to a policy or custom; *respondeat*

dismissed.

That being said, the Court takes this opportunity to note that while the facts at bar are not nearly as entertaining as the ones in *Butler*, the legal principle is clearly analogous. "Section 1983 does not federalize all torts or other deprivations of rights committed by a person who is a law enforcement officer or other government agent." *Id.* at 1265. The essence of Plaintiff's Complaint, in reality, is a garden-variety battery claim, more properly cognizable in state court. However, out of an abundance of caution, the Court will permit Plaintiff the opportunity to amend his Complaint to try to state a federal claim—despite the better judgment of the Court that any attempt to allege that Criswell was acting under color of state law on the evening in question will ultimately prove futile.

## II. Facial Constitutional Challenge

Plaintiff challenges the constitutionality of the noise ordinance both facially and as-applied. The as-applied claim, as discussed *supra*, is due to be dismissed because Plaintiff has not adequately alleged that the ordinance was applied to him.

As to the facial challenge, Plaintiff argues that: (1) the ordinance's definition of "unreasonable noise" is unconstitutionally vague (Doc. 1, ¶ 111); and (2) the ordinance is an unconstitutional prior restraint which confers unfettered discretion on the permitting authority (*id.* ¶ 113).

---

*superior* is not an appropriate basis for suit. *Pembaur v. Cincinnati*, 475 U.S. 469, 478–81 (1985). While the disposition of the instant matter does not turn on the custom-or-policy element, the Court notes that isolated incidents are often not enough to make out a failure-to-supervise claim because they typically fall into improper *respondeat superior*-type allegations. *See, e.g., Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 406–12 (1997); *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989). Therefore, if Plaintiff chooses to replead these claims, he should keep that distinction in mind.

6

### a. Vagueness

A law is void for vagueness if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). To prove that the ordinance is vague, Plaintiff must demonstrate either that the ordinance fails to give fair notice of what conduct is prohibited or that it fails to provide objective standards of enforcement. *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1271 (11th Cir. 2007). However, "flexibility and reasonable breadth, rather than meticulous specificity" are to be used when interpreting noise ordinances. *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).

The ordinance provides that "[n]o person shall produce . . . any unreasonable noise from within any property." Daytona Beach Code of Ordinances § 42-214(b). It defines "unreasonable noise" as "any raucous, jarring, or other sound of such intensity, duration or character which constitutes a nuisance, or which disturbs the enjoyment of life or property by persons of reasonable sensitivity within the area of audibility." *Id.* § 42-212.

The use of "raucous," "jarring," "disturbing," and "nuisance" have been upheld as terms that are not overly vague. *Reeves v. McConn*, 631 F.2d 377, 386 (5th Cir. 1980) (upholding an ordinance which prohibited noise that was "unreasonably loud, raucous, jarring, disturbing or a nuisance to persons within the area of audibility"); *see also Kovacs v. Cooper*, 336 U.S. 77, 79 (1984) (approving the use of "raucous"). Plaintiff's argument accordingly focuses on the second part of the ordinance's definition— "disturbs the enjoyment of life or property by persons of reasonable sensitivity within the area of audibility." (Doc. 22, p. 7.)

7

In *DA Mortgage*, the U.S. Court of Appeals for the Eleventh Circuit upheld against a vagueness challenge a noise ordinance quite similar to the one at bar. 486 F.3d at 1271. That ordinance prohibited noise that would "disturb the peace, quiet and comfort of the neighboring inhabitants," or alternatively, noise that is played at a "louder volume than is necessary for convenient hearing." *Id.* The Eleventh Circuit noted that the word "convenient" was somewhat abstract; however, when the definition as a whole was read to give the words their plain, everyday meaning, "any interested person would know how to gauge what sound volume would" be prohibited. *Id.* at 1271–72.

The Court does not find the phrase "disturbs the enjoyment of life or property by persons of reasonable sensitivity within the area of audibility" to be significantly different from the language approved by the Eleventh Circuit in *DA Mortgage*—"disturb the peace, quiet and comfort of the neighboring inhabitants." Nor is it significantly different from the language approved in *Reeves*—"disturbing or a nuisance to persons within the area of audibility." *Reeves*, 631 F.2d at 386. The Court is confident that an ordinary person reading that language would know which sorts of noises are prohibited.

Nonetheless, Plaintiff argues that the "reasonable sensitivity" language "injects an unacceptable level of subjectivity" into the definition. (Doc. 22, p. 7.) However, definitions based on the "reasonable person standard"—a wide-ranging standard used throughout the law—have been upheld in this Circuit. *See DA Mortg.*, 486 F.3d at 1272; *Reeves*, 631 F.2d at 386; *see also Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5th Cir. 1974) (holding that a regulation was not subjective and void for vagueness because it was based on the objective reasonable person standard, which "has been, and in all probability will remain, one of the rudimentary precepts of our law").

Reasonableness is not an indicator of subjectivity, but instead is an objective, generalized manner by which ordinary people can gauge whether their conduct is prohibited. *DA Mortg.*, 486 F.3d at 1272 (citing *Reeves* in holding that an ordinance based on the reasonable person standard was not vague). Thus, the ordinance's general prohibition on "unreasonable noise" is not impermissibly vague. *Cf. Cameron v. Johnson*, 390 U.S. 611, 616 & n.7 (1968) (noting that the word "unreasonably" in an ordinance did not create vagueness, but rather that it is a commonly understood word with a well-settled meaning that provided notice of the conduct proscribed). Moreover, the ordinance's further limiting definition regarding "persons of reasonable sensitivity" is merely an appropriation of the reasonable person standard to this particular context, which concerns how sensitive the average person would be to loud noises.

Furthermore, "reasonable sensitivity" is really just a restatement of the term "nuisance." The foundation of nuisance law is that an annoyance is only a nuisance so long as it has that effect on an "ordinary person[] with a reasonable disposition . . . [with] normal sensibilities," not those who are "particularly sensitive." *Beckman v. Marshall*, 85 So. 2d 552, 555 (Fla. 1956) (citations and internal quotation marks omitted). Thus, in effect, to state that something is a "nuisance" is to restate the fundamental, well-settled principle that it disturbs an ordinary person with reasonable sensibility who is not hyper-sensitive. As binding precedent has upheld the use of "nuisance" in a noise ordinance, *see Reeves*, 631 F.2d at 386, this Court finds that "reasonable sensitivity" is simply a paraphrase of the same idea.

Because the Court finds that the ordinance's prohibition on "unreasonable noise" is not subjective, the Court also finds that the ordinance provides objective enforcement

standards, for the reasons discussed above. *See DA Mortg.*, 486 F.3d at 1272 (holding that an ordinance prohibiting "unreasonably loud, excessive, unnecessary or unusual noises" did not fail to provide clear enforcement standards). Therefore, the Court finds that, on the basis of the controlling precedent[5] of *Reeves* and *DA Mortgage*, the noise ordinance in the instant case is not void for vagueness.

### b. Unfettered Discretion

Plaintiff also argues that the ordinance is an unconstitutional prior restraint[6] because it allows the Permits and Licensing Director to suspend a sound permit without proper safeguards, thereby conferring unfettered discretion on the permitting authority. (Doc. 1, ¶ 113.) The ordinance sets forth various circumstances in which the Permits and Licensing Director may suspend a sound permit for up to ninety days, depending on the permittee's violation. Daytona Beach Code of Ordinances § 42-245(a). It also provides the following criteria for "determining whether to suspend a sound permit and the duration of suspension": "harm to public safety and the negative effects on the use and enjoyment of neighboring properties, the intent of the permit holder, the extent, duration and repetition of the violation, previous violations, any previous warnings or

---

[5] Plaintiff urges this Court (Doc. 22, pp. 7–9) to adopt the reasoning of the Virginia Supreme Court in *Tanner v. City of Va. Beach*, 277 Va. 432 (2009). The *Tanner* court held that the terms "reasonable persons" and "reasonable sensitivity" in a noise ordinance rendered the ordinance impermissibly vague because they "invite[d] arbitrary enforcement." *Id.* at 440–41. On the basis of binding precedent such as *Reeves* and *DA Mortgage* approving the use of the reasonable person standard in noise ordinances, this Court cannot agree.

[6] While Plaintiff terms this allegation "prior restraint" (Doc. 1, ¶ 113), the substance of his argument focuses on unbridled discretion in the hands of a licensing official, which draws on a different body of First Amendment case law. *See, e.g.*, *Near v. Minnesota*, 283 U.S. 697 (1931) (creating the foundational prior restraint doctrine, in its typical context of newspaper censorship prior to publication). In the instant case, in which Plaintiff complains of potential suspension of a permit after it has been granted, the Court addresses these allegations in terms of unfettered discretion.

advisements, and the breadth of the record of information." *Id.* § 42-245(b). Furthermore, the ordinance provides that when a permit is suspended, the permittee shall be notified in writing and has the right to appeal. *Id.* § 42-245(c).

The Court finds this unfettered discretion argument meritless. The substantive criteria for suspension are not subject to the whim of the Permits and Licensing Director, but rather are "narrowly drawn, reasonable and definite standards to guide the licensor's determination." *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002)[7] (upholding a permitting scheme which provided similar grounds for permit denial, including danger to public health and safety, misrepresentation of the permit applicant, and previous violations). As the ordinance provides ample notice of prohibited conduct, and it also provides precise criteria for when and how long a sound permit should be suspended in the event that a permitee engages in such prohibited conduct, this Court finds that the ordinance is constitutional on its face. Therefore, Plaintiff's facial constitutional challenge is due to be dismissed.

---

[7] Plaintiff submits (Doc. 22, pp. 9–10) that the Court must apply certain procedural safeguards, as set forth in *Freedman v. Maryland*, 380 U.S. 51 (1965), and applied to a licensing scheme in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990). Plaintiff argues that *FW/PBS* controls the instant case, as opposed to *Thomas*. However, the *Freedman* standard is inapplicable to content-neutral permitting schemes, unlike the content-based regulations on sexually oriented businesses in *FW/PBS*. *See Thomas*, 534 U.S. at 322–23. The ordinance in the instant case is plainly content-neutral. *See* Daytona Beach Code of Ordinances § 42-211(c) ("It is not the intent of the city to control or regulate noise based on the content or type of speech involved, or the speaker's viewpoint."); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (noting that "[t]he government's purpose is the controlling consideration" in determining content-neutrality); *DA Mortg.*, 486 F.3d at 1266–67 (finding similar ordinance content-neutral because "[i]t does not distinguish, for example, between excessively loud singing, thunderous classical music recordings, reverberating bass beats, or television broadcasts of raucous World Cup soccer finals . . . [but] simply prohibits excessively loud noise"). As such, *FW/PBS* is inapposite.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant, City of Daytona Beach, Motion to Dismiss (Doc. 20), and Pro Se Answer of Defendant, Mark Lucke Criswell, and Motion to Dismiss Count III of Plaintiff's Complaint (Doc. 24) are **GRANTED**.

2. Counts I, II, and IV are **DISMISSED WITHOUT PREJUDICE**.

3. As to Count III, the § 1983 claim and the as-applied constitutional challenge are **DISMISSED WITHOUT PREJUDICE**. The facial constitutional challenge in Count III is **DISMISSED WITH PREJUDICE**.

4. Plaintiff has leave to file an amended complaint that complies with the strictures set forth in this Order on or before March 1, 2013.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 30, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

*Pro Se* Party